## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**DAVID WARNER**,

      Plaintiff,

v.                                                              **No. 12cv0627 MCA/GBW**

**VILLAGE OF RUIDOSO, a municipal corporation;**
**Village of Ruidoso Attorney DAN BRYANT;**
**Ruidoso Police Officer NELSON;**
**Ruidoso Police Officer JONAS WADE PROCTOR; and**
**Retired Ruidoso Police Chief WOLFGANG BORN,**
individually and in their official capacities,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>
## <u>AND ORDER TO SHOW CAUSE</u>

     **THIS MATTER** is before the Court on Defendants Village of Ruidoso's, Detective Arthur Nelson's, Officer Jonas Wade Proctor's, and former Police Chief Wolfgang Born's Motion for Summary Judgment, filed February 13, 2013 [Doc. 42]. Defendants assert that they are entitled to qualified immunity on all of pro-se Plaintiff David Warner's constitutional claims brought under 42 U.S.C. §1983, and that they also are entitled to dismissal of Warner's supervisory-liability claims as a matter of law. *See* Doc. 42 at 1. Having considered the parties' submissions, the record, and the applicable law, and being otherwise informed in the premises, the Court denies the motion in part and grants it in part. The Court will further order the Defendants to show cause why, on the undisputed facts as set forth by the parties, the Village and Officers Nelson and Proctor should not be held liable for violation of Warner's First-Amendment right to free speech and why injunctive relief should not issue, all as set forth herein below.

# I.      APPLICABLE STANDARDS

On a motion for summary judgment , the Court

> view[s] the evidence and its reasonable inferences in the light most favorable to the
> non-movant.  Summary judgment is appropriate if "the movant shows that there is
> no genuine dispute as to any material fact and the movant is entitled to judgment
> as a matter of law."  Fed. R. Civ. P. 56(a).  An issue of fact is genuine if the evidence
> is such that a reasonable jury could return a verdict for the non-moving party on the
> issue.  An issue of fact is material if under the substantive law it is essential to the
> proper disposition of the claim.

*Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (internal quotation marks and

citations omitted).  The ultimate inquiry in a summary-judgment disposition is "whether the

evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-

sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

251-52 (1986).[1]

> When a defendant asserts qualified immunity at the summary judgment stage,
> the burden shifts to the plaintiff, who must clear two hurdles to defeat the
> defendant's motion. The plaintiff must demonstrate, on the facts alleged, that (1) the
> defendant violated a constitutional right, and (2) the right was clearly established at
> the time of the alleged unlawful activity. . . . .

> A constitutional right is clearly established when, at the time of the alleged
> violation, the contours of the right were sufficiently clear that a reasonable official
> would understand that his actions violate that right. . . . While the plaintiff does not
> have to present a case with an identical factual situation, the plaintiff must show
> legal authority making it apparent that in the light of pre-existing law a reasonable
> official would have known that the conduct in question violated the constitutional
> right at issue.  In determining whether a right was clearly established, we look for
> Supreme Court or Tenth Circuit precedent on point or clearly established weight of
> authority from other courts finding the law to be as the plaintiff maintains.

---

[1] "Rule 56 was amended, effective December 1, 2010.  Under the amended rule, the standard
previously enumerated in subsection (c) was moved to subsection (a), and the term genuine 'issue'
became genuine 'dispute.'  *See* Fed. R. Civ. P. 56 advisory committee's notes (2010 Amendments).
However, the 'standard for granting summary judgment remains unchanged.'  *Id.*"  *E.E.O.C. v. C.R.
England, Inc.*, 644 F.3d 1028, 1037 n.8 (10th Cir. 2011)

*Lundstrom v. Romero*, 616 F.3d 1108, 1118 (10th Cir. 2010) (internal quotation marks and citation omitted); *Storey v. Taylor*; 696 F.3d 987, 992 (10th Cir. 2012). "Once the district court determines that the right at issue was 'clearly established,' it becomes defendant's burden to prove that her conduct was nonetheless objectively reasonable." *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1251 (10th Cir. 2003).

The qualified-immunity doctrine "provides ample protection to all but the plainly incompetent or those who knowingly violate the law," *Malley v. Briggs*, 475 U.S. 335, 341 (1986), and is intended to protect officers not only from "costly and harassing litigation," but also so that officers will not be unduly "inhibit[ed] . . . in performing their official duties," *Medina v. Cram*, 252 F.3d 1124, 1127 (10th Cir. 2001). Thus, at the second stage of the qualified-immunity analysis (after the Court concludes that the plaintiff has alleged facts to show that the defendant violated a clearly-established constitutional right), a defendant is entitled to qualified immunity if he can show "in light of the clearly established principles governing [the constitutional question], he could, as a matter of law, reasonably have believed that [his action] was lawful." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987); *Harlow v. Fitzgerald*, 457 U.S. 800, 818-29 (1982) ("If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct. Nevertheless, if the official pleading the defense claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard, the defense should be sustained. But again, the defense would turn primarily on objective factors."). In situations in which, as here, the plaintiff seeks discovery,

> it should first be determined whether the actions the [plaintiffs] allege [the defendant police officer] to have taken are actions that a reasonable officer could have believed lawful. If they are, then [the officer] is entitled to dismissal prior to discovery. If they are not, and if the actions [the officer] claims he took are different from those

> the [actions the plaintiffs] allege (and are actions that a reasonable officer could have
> believed lawful), then discovery may be necessary before [the officer's] motion for
> summary judgment on qualified immunity grounds can be resolved.

*Anderson*, 483 U.S. at 646 n.6.

## II.   ALLEGATIONS IN WARNER'S AMENDED COMPLAINT/UNDISPUTED FACTS AND PROCEDURAL HISTORY

In September, 2008, Warner created a non-profit "Foundation for the Truth" to support his attempts to put pressure on the Village of Ruidoso police department to more fully investigate the shooting death and alleged robbery of his son.  *See* Am. Compl. at 4; Doc. 45 at 10 (Warner's Aff.); *see also* Doc. 42-1 (Detective Nelson's Aff.).  To raise money for the foundation, Warner requested public donations.  Warner parked on the Village of Ruidoso's main street.  He taped

> numerous signs and posters [] to his truck indicating that the Ruidoso police did not
> take prints, do ballistics, powder residue or any kind of forensics at all in the
> investigation of the shooting death and robbery of plaintiff's son, and a sign
> depicting the first amendment to the United States Constitution, "Redress," to name
> a few as well as a jar in which donations were being accepted[2].

Am. Compl. at 4.  Warner states that he did "not shout[] or chant[] slogans, nor did [he] prevent others (passer byes) from walking along the sidewalk or interfere with others in any way except to ask if they wanted a flier."  *Id.*   In May 2009, while Warner was parked on the main street "advocating" and handing out fliers, Ruidoso Police Officer Chavez (who is not a named defendant) told Warner "to remove several signs that were placed on plaintiff's truck or he would be arrested."  *Id.* at 3.  Warner "went to Village Hall to procure a permit and was directed by the clerk to go to

---

[2]  Although, in their brief, the Defendants describe the signs and flyers as materials that "solicited donations," Doc. 42 at 2, they have submitted nothing in the summary-judgment record to support those statements or to rebut the sworn allegations describing the content of the posters in Warner's Amended Complaint.  The Court will, therefore, accept Warner's description of the posters as undisputed.

4

Planning and Zoning and was told by Planning and Zoning that a permit was not required" to do what he was doing. *Id.* at 4. In June 2009, a Village Officer (apparently Defendant Ruidoso Police Officer Jonas Wade Proctor) cited Warner cited for violating N.M. Code of Ordinances ch. 58, art. III, § 58-84(b) (1998) (the "Ordinance"). This Ordinance makes it a crime to "solicit" on public property:

> Solicitation on public property. The practice by itinerant vendors or solicitors of going onto public property for the purpose of soliciting money . . . shall be considered a nuisance and punishable under this Code, except as otherwise provided by law or authorized by the council.

Officer Proctor (or whoever cited Warner) further "order[ed] plaintiff to remove all signs from his vehicle and leave the area." Am. Compl. at 4-5. Warner was tried and convicted in municipal court, but his conviction was dismissed after he sought a *de novo* trial in the state district court. *See id.* at 4. In July 2009, Detective Nelson, after allegedly receiving "complaints . . . about him soliciting for money," asked Warner if he had a "permit to solicit for funds," and when he responded that he did not, again issued a citation for violation of Ordinance 58-84(b). Doc. 42-1. Detective Nelson also "stated to plaintiff that he could not be on the street with his signs on plaintiff's pickup truck" and "order[ed] plaintiff to remove all signs from his vehicle and leave the area." Am. Compl. at 5. Officer Proctor provided "backup" for Detective Nelson during the citation. *See id.* Nelson contends that he cited Warner "based on observing that [Warner] was handing out flyers and that we had received complaints from the community that he was handing out flyers and asking for donations." Doc. 42-1. Warner was again convicted in municipal court and, after a *de novo* trial in the district court, he was again convicted. But he successfully appealed to the New Mexico Court of Appeals, which reversed his conviction. *See* Am. Compl. at 5.

Warner contends that he was "selectively" cited and prosecuted under the Ordinance, stating that neither the firemen who collect donations for the Muscular Dystrophy charitable organization on the main street "while standing in traffic," nor private musicians who perform on public property in the same area, and "who accept donations," have ever been cited or prosecuted under the Ordinance.  *Id.* at 7.  He also alleges that he is "a Hispanic male" and that "no Anglo or Caucasian persons have ever been prosecuted for the same offense."  *Id.*  Warner alleges that the "Village of Ruidoso has a policy or custom of not allowing plaintiff to advocate or disseminate information on public property owned or under its control and have failed to train police officers in the area of free speech."  *Id.* at 8.

Warner lists seven claims under § 1983:  Count I is for unconstitutional retaliation in response to Warner's exercise of his First-Amendment rights to criticize the police and the Village, by prosecuting him under an otherwise unused Village ordinance and by requiring him to remove his signs and to leave the area.  *See* Am. Compl. at 5-6.  Count II, based on malicious prosecution, is brought against Detective Nelson[3] for initiating and continuing an invalid criminal prosecution with "the primary motive for misusing the process . . . to keep plaintiff from exercising his free speech in a public forum."  *Id.* at 6.  Count III, an equal-protection/racial-discrimination claim, is based on the allegations that Nelson initiated "judicial proceedings against plaintiff a Hispanic male where no Anglo or Caucasian persons have ever been prosecuted for the same offense and was a spiteful effort to stop plaintiffs free speech for reasons wholly unrelated to any legitimate state objective" and that "Defendants treated plaintiff a (Hispanic male) differently from others (Anglo,

---

[3]  The Court dismissed Warner's § 1983 claims based on malicious prosecution against Village Attorney Dan Bryant under the doctrine of absolute prosecutorial immunity.  *See* Sept. 10, 2013 Memorandum Opinion and Order.

Caucasian) who were similarly situated." *Id.* at 7. Count IV is a claim for selective prosecution based on "defendants' intent to remove plaintiff from a public venue where he was exercising his constitutional rights," *id.*, which the Court construes as another way to express his retaliation claim in Count I. Count V is for conspiracy to violate Warner's First-Amendment right to free speech between "Nelson, Proctor and Born . . . in order to bar plaintiff from exercising his right to free speech in a public forum by the issuance of a citation(s), ordering plaintiff to remove his signs from his truck and removing plaintiff from a public forum." *Id.* at 8. Count VI, which is brought against the Village, alleges that the Village had a "custom or policy" that resulted in the violation of his right to free speech by refusing to allow him "to advocate or disseminate information on public property owned or under its control;" and that the Village failed to train its officers "in the area of free speech" and was deliberately indifferent to Warner's right to free speech. *Id.* Count VII is brought against Proctor and Nelson for violation of his First-Amendment rights by "order[ing] him to pull down his signs and leave because of the message being conveyed." *Id.* at 9.

## III.    THE NEW MEXICO COURT OF APPEALS' OPINION

In reversing Warner's conviction, relying on opinions discussing First-Amendment violations written by the United States Supreme Court and the Tenth Circuit Court of Appeals, the New Mexico Court of Appeals found that Village Ordinance 58-84(b) was a "content-neutral ordinance[] that restrict[s] speech" and applied an "intermediate level of scrutiny." *Vill. of Ruidoso v. Warner*, 274 P.3d 791, 795 (N.M. Ct. App. Feb. 15, 2012).

> Under that scrutiny, the restrictions in the ordinance must be narrowly tailored to serve a significant or substantial governmental interest without unnecessarily interfering with First Amendment freedoms and must "leave open ample alternative channels for communication of the information." *Clark* [*v. Cmty. for Creative Non–Violence*], 468 U.S. [288] at 293, 104 S. Ct. 3065 [(1984)]; *Vill. of Schaumburg*

7

> [*v. Citizens for a Better Environment*], 444 U.S. [620]at 637, 100 S. Ct. 826 [(1980)]; *Am. Target Adver., Inc. v. Giani*, 199 F.3d 1241, 1247 (10th Cir. 2000).

*Id.* The Court of appeals held that the Ordinance

> is clearly facially unconstitutional, unless a law or authority provides otherwise, because Section 58–84(b) outright prohibits all solicitation of money at any time, at any place, and in any manner. . . . [T]he scheme facially and unconstitutionally prohibits activity without obtaining a permit, the issuance of which rests in what appears from the lack of evidence to the contrary to be unbridled discretion of public officials. . . . [T]he regulatory scheme before us does not "constitute[ ] a reasonable time, place, and manner restriction on [Defendant's] exercise of protected First Amendment Rights [,]" nor did the Village sustain its "burden . . . to show the validity of [any significant governmental interest] and the absence of less intrusive alternatives." . . . The scheme utterly fails to pass the test of intermediate scrutiny, a test that requires the governmental regulator to show where
>
>> [e]xpression, whether oral or written or symbolized by conduct, is subject to reasonable time, place, or manner restrictions.... [R]estrictions of this kind are valid provided that they are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.
>
> *Clark*, 468 U.S. at 293, 104 S. Ct. 3065; *see also Turner Broad. Sys.*, 512 U.S. at 642, 114 S. Ct. 2445 (stating that "regulations that are unrelated to the content of speech are subject to an intermediate level of scrutiny," *citing Clark*, 468 U.S. at 293, 104 S.Ct. 3065).   And the scheme "subject[s] the exercise of First Amendment freedoms to the prior restraint of a [permit]" and has built in no protection of protected speech against "the uncontrolled will of an official—as by requiring a permit . . . which may be granted or withheld in the discretion of such official." *Am. Target Adver.*, 199 F.3d at 1252 (internal quotation marks and citations omitted). Moreover, the Village presented no evidence showing that the solicitation regulations are narrowly tailored to serve a substantial, significant governmental interest, nor any evidence that the restriction leaves open ample alternative channels for communication of the information Defendant sought to give to the public.

*Id.* at 798-99.  The Court of Appeals noted that the Village did not raise, and neither the municipal court nor the district court considered, any "other ordinances when convicting Defendant for violating Section 58–84(b)."  *Id.* at 793.

8

IV.    ANALYSIS

A.  Claims against the Village.

Contrary to the Defendants' contention that they are entitled to qualified immunity, a governmental entity, like the Village in this case, may "be sued for monetary, declaratory, or injunctive relief for depriving someone of constitutional or civil rights. *See Monell v. Department of Soc. Servs.*, 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).  Qualified immunity is not available as a defense to [such] liability." *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir. 2000); *see Becker v. Bateman*,  709 F.3d 1019, 1022 (10th Cir. 2013) (holding that, while an individual police officer is "entitled to assert the qualified immunity defense, the City is not").  The Court, therefore, will consider the doctrine only in relation to Warner's claims against the individual Officers.

Other than citing *Monell* for the proposition that § 1983 "municipal liability is imposed when the deprivation is the result of a 'government[al] policy or custom'" and stating that "no municipal liability exists under §1983 in the absence of the underlying violation," Doc. 42 at 10, the Village provides no evidence and makes no argument that it is entitled to summary judgment.  As the Village notes, however, the New Mexico Court of Appeals concluded that the Village's policy, as expressed by Ordinance 58-84(b), and its repeated enforcement of that policy and criminal prosecutions of Warner, violated Warner's First-Amendment rights.  *See Warner*, 274 P.3d at 798-99.  The Village did not appeal from these rulings, and they are, therefore, final for purposes of collateral estoppel[4].  *See Allen v. McCurry*, 449 U.S. 90, 94, 101-04 (1980) (noting that, "[u]nder

_____

[4]  The same thing is not true with respect to Warner's § 1983 claims against the individual officers, however, because they were not parties to the state criminal proceedings.  *See Novitsky v. City Of Aurora*, 491 F.3d 1244, 1252 (10th Cir. 2007) (holding that "a court's conclusion during a

collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case;" observing "that every Court of Appeals that has squarely decided the question has held that collateral estoppel applies when § 1983 plaintiffs attempt to relitigate in federal court issues decided against them in state criminal proceedings;" and holding that  the doctrine applies to require courts to give the same "deference to judgments in state criminal proceedings" in § 1983 actions when the issue was litigated to final judgment after a full and fair opportunity to litigate the issue); *Gonzales v. Hernandez*, 175 F.3d 1202, 1204 (10th Cir. 1999) ("A federal court is required to give a state court judgment the same preclusive effect it would be given under the laws of the state in which it was rendered.") (citations omitted); *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 986 (10th Cir. 1994) (noting that court could have applied collateral estoppel to hold that the defendant's intent in the civil case had already been conclusively litigated in his criminal litigation because "New Mexico jurisprudence in recent years has made room for the use of nonmutual offensive collateral estoppel under conditions that would surely apply here"); *Silva v. State*, 106 N.M. 472, 745 P.2d 380 (1987) (holding that "the doctrine of offensive collateral estoppel may be applied when a plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully regardless of whether plaintiff was privy to the prior action;" holding that a "trial judge may determine that its application would be fundamentally

_____

criminal prosecution that a law enforcement officer's conduct was unconstitutional is not afforded collateral estoppel effect in a subsequent civil case against the officer because there is no privity between the prosecution in the criminal case and the officer.  *See Morgan v. Gertz*, 166 F.3d 1307, 1309 (10th Cir. 1999); *Kinslow v. Ratzlaff*, 158 F.3d 1104, 1105–07 & n. 3 (10th Cir. 1998).  Thus, Mr. Novitsky must establish anew that the officers violated his constitutional rights in this § 1983 action.").

unfair and would not further the aim of the doctrine, which is to prevent endless relitigation of issues" and that "[f]undamental fairness requires that the party against whom estoppel is asserted had a full and fair opportunity to litigate"); *In re Forfeiture of Fourteen Thousand Six Hundred Thirty Nine Dollars ($14,639) in U.S. Currency in Various Denominations & Two (2) Digital Pagers*, 902 P.2d 563, 569, 120 N.M. 408, 414 (Ct. App. 1995) (holding, as an issue of first impression, that "under the doctrine of collateral estoppel, issues resolved in a criminal trial prosecuted by the State should be given preclusive effect in a civil forfeiture proceeding initiated by the Department" and affirming the *sua-sponte* dismissal of a civil-forfeiture petition based on collateral estoppel where an order issued in the defendant's prior criminal case held that the search producing the money sought to later be civilly forfeited was unconstitutional); *State v. Bishop*, 113 N.M. 732, 733-35, 832 P.2d 793, 794-96 (Ct. App. 1992) (observing that "[t]he term 'cross-over collateral estoppel' has been used to describe the application of collateral estoppel from a civil proceeding to a criminal proceeding, or vice versa; assuming, "without deciding, that under the proper circumstances cross-over collateral estoppel from a civil proceeding to a criminal proceeding is permitted in New Mexico;" but holding that where an administrative-hearing officer hearing officer "is not a judicial officer and the district attorney's office was not represented during the license revocation hearing," the district court properly refused to apply collateral estoppel for lack of fundamental fairness).

Although Warner, who is pro se, has not cross-moved for summary judgment on the issue of municipal liability, "district courts are widely acknowledged to possess the power to enter summary judgment *sua sponte*, so long as the losing party was on notice that [it] had to come forward with all of [its] evidence." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986).  Rule 56(f)

11

of the Federal Rules of Civil Procedure also now expressly provides that a court may *sua sponte* grant summary judgment "[a]fter giving notice and a reasonable time to respond" and "identifying for the parties material facts that may not be genuinely in dispute."  FED. R. CIV. P. 56(f); *Blakely v. USAA Cas. Ins. Co.*, 633 F.3d 944, 949 (10th Cir. 2011).

The material facts in this case as presented by the Village and Warner are undisputed: Warner aggressively carried out in the public streets a campaign criticizing the Village's Police Department for its alleged incompetence and lack of investigation into his son's death; Village Officers repeatedly forced Warner to take down his signs criticizing the Village's Police Department and to leave the public areas where he was "advocating" his cause – acts not prohibited by any statute (as opposed to the unconstitutional Ordinance prohibiting all "soliciting" on the public streets); Village Officers twice enforced the "clearly facially unconstitutional" criminal Ordinance after its Officers observed Warner handing out flyers supporting his contentions and received complaints that Warner was also soliciting donations; and the Village twice criminally prosecuted Warner for violating the unconstitutional Ordinance, but did not enforce it against any other itinerant solicitors who were not criticizing the Village and its Police Department.  Under these undisputed facts, it appears that the Village is liable for violating Warner's First-Amendment rights under Count VI as a matter of law under *Monell*.

The Court will permit the Village an opportunity to show cause in writing why summary judgment should not be granted in favor of Warner on the issue of the Village's liability for violation of this Count and why a permanent injunction should not issue precluding the Village and its officers from interfering with Warner's First-Amendment right to park his truck that contains signs criticizing the Village's Police Department, and to hand out flyers expressing his views, on the

public streets.  The Village shall also show cause why summary judgment on the issue of liability should not be granted in favor of Warner on his failure-to-train claim, as it appears to be undisputed that Officers Chavez, Nelson, and Proctor all forced Warner to stop advocating and criticizing the Village by requiring him to remove his signs from his truck and to leave the public streets where he was passing out flyers in circumstances in which Warner was not causing a public disturbance or nuisance by shouting, chanting, or assaulting passerbyes[5].

> A municipal policy is a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by [a municipality's] officers." *Id.* [quoting *Monell*, 436 U.S. at 690].  An act committed by an official who has been delegated the power of "establishing final policy" will also constitute a municipal policy. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986).  In addition, "where a municipality's failure to train its employees in a relevant respect evidences a deliberate indifference to the rights of its inhabitants," that failure to train may "be properly thought of as a city policy . . . [and] is actionable under § 1983."  *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989) (internal quotation marks omitted).

*Novitsky v. City Of Aurora*, 491 F.3d 1244, 1259 (10th Cir. 2007).

**B.  Claims against the Individual Officers[6].**

---

[5]  The Defendants do not attempt to rebut Warner's allegations that he was not engaging in any type of unlawful behavior and Nelson's affidavit states that he observed Warner only handing out flyers; he does not contend that Warner was doing anything to disturb the peace that would require police intervention, like blocking doorways to businesses or impeding traffic.

[6]  If the Village is found to be liable for violations of First-Amendment rights, a finding that the individual officers are also individually liable would be superfluous, because Warner may recover only a single award of damages for a constitutional violation.  *See U.S. Indus., Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1261-62 (10th Cir. 1988) ("Where a single injury gives rise to more than one claim for relief, a plaintiff may recover his damages under any claim, but he may recover them only once.  If a jury awards damages for two claims, both of which compensate for the same harm, the verdict must be reduced so that the plaintiff is only compensated once for the injury he has suffered."), *overruled on other grounds as recognized by Anixter v. Home–Stake Prod. Co.*, 77 F.3d 1215, 1231 (10th Cir. 1996)); *Clappier v. Flynn*, 605 F.2d 519, 530-31 (10th Cir. 1979) (holding that, where a plaintiff seeks compensatory damages under two theories arising under the same operative facts, "double recovery is precluded when alternative theories seeking the same relief

Because it focuses on the Officers' subjective motivation, the individual Officers' motion for summary judgment appears to be limited to Warner's claims for retaliation.  They argue that the Officers cited Warner "because he was violating what was then a valid ordinance, in response to numerous citizen complaints[, therefore] . . . Defendants are entitled to qualified immunity."  Doc. 42 at 4.  In the same vein, they argue that "Defendants were simply trying to maintain the peace, enforce what they believed to be proper Village Ordinances and address citizen concerns.  Without doubt, Plaintiff believes that there was some illegal or unconstitutional motive, but there is no evidence to support his theory."  *Id.* at 6.  Defendants further contend that "they did not violate clearly established law at any time during their efforts to perform their duties.  They acted solely out of a legitimate desire to perform their legal duties as they perceived them at the time. Thus, both Plaintiff's claims of individual and supervisory liability claims under 42 U.S.C. §1983 fail."  *Id.* at 5.

But the individual Officers support their motion only with Detective Nelson's affidavit stating that on *one* of the three occasions in which three *different* Officers forced Warner to take his signs off of his truck and leave the area where he was handing out flyers, Detective Nelson "was dispatched to a report [of Warner] . . . at the Four Corners Mall . . . . handing out flyers and soliciting for donations. . . ." Doc. 42-1.  He found Warner "on the street, handing out flyers for the Davis Warner 'Foundation for the Truth.'"  *Id.*  Detective Nelson asked Warner if Warner "had a permit to solicit for funds and he related that he didn't," and Nelson "issued a citation for [violation of] 58-84B."  *Id.*   Nelson states, "Warner was cited for the violation based on observing that he was handing out flyers and that we had received complaints from the community that he was handing

are pled and tried together").

14

out flyers and asking for donations.  This was the sole reason for issuing a citation to Mr. Warner."

*Id.*

### 1.  Warner has established violation of a First-Amendment right to free speech that is clearly established.

Although the Officers argue, in a conclusory fashion, that Warner cannot establish violation of a clearly-established constitutional right, their briefing is unhelpful because they have utterly ignored the basic contours of a First-Amendment violation.

> The First Amendment, applicable to the States through the Fourteenth Amendment, provides that "Congress shall make no law . . . abridging the freedom of speech." The hallmark of the protection of free speech is to allow "free trade in ideas"-even ideas that the overwhelming majority of people might find distasteful or discomforting.  *Abrams v. United States*, 250 U.S. 616, 630, 40 S. Ct. 17, 63 L. Ed. 1173 (1919) (Holmes, J., dissenting); *see also Texas v. Johnson*, 491 U.S. 397, 414, 109 S. Ct. 2533, 105 L. Ed. 2d 342 (1989) ("If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable").  Thus, the First Amendment "ordinarily" denies a State "the power to prohibit dissemination of social, economic and political doctrine which a vast majority of its citizens believes to be false and fraught with evil consequence." *Whitney v. California*, 274 U.S. 357, 374, 47 S. Ct. 641, 71 L. Ed. 1095 (1927) (Brandeis, J., concurring).  The First Amendment affords protection to symbolic or expressive conduct as well as to actual speech.

*Virginia v. Black*, 538 U.S. 343, 358 (2003).  In *City of Houston v. Hill*, 482 U.S. 451, 455 (1987), the Supreme Court held that an ordinance making it illegal to "oppose, molest, abuse or interrupt any policeman in the execution of his duty" was substantially overbroad and, therefore, unconstitutional.  The Court explained that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers" and that "[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *Id.* at 461–63.

15

"In determining whether [Warner] has met his burden of establishing a constitutional violation that was clearly established, [the Court] will construe the facts in the light most favorable to [Warner] as the nonmoving party." *Thomson v. Salt Lake County*, 584 F.3d 1304, 1312 (10th Cir. 2009); *see Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009) ("The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity."); *Riggins*, 572 F.3d at 1107 (noting that generally "we accept the facts as the plaintiff alleges them"). If challenged by the defendant's summary-judgment motion, "a plaintiff's version of the facts must find support in the record." *Thomson*, 584 F.3d at 1312.

As noted above, Count VII of Warner's complaint is brought against Proctor and Nelson and alleges that the Officers violated his First-Amendment rights by "order[ing] him to pull down his signs and leave because of the message being conveyed." Am. Compl. at 9. The Officers have not challenged Warner's factual statements. Warner's First-Amendment right to criticize the police on the public streets was clearly established in 2009, *see City of Houston*, 482 U.S. at 461-62, and he has successfully satisfied his initial summary-judgment burden. Thus, the Officers had to come forward to show, "in light of the clearly established principles governing [the constitutional question], [they] could, as a matter of law, reasonably have believed that [their actions were] lawful." *Anderson*, 483 U.S. at 641; *Roska*, 328 F.3d at 1251 ("Once the district court determines that the right at issue was 'clearly established,' it becomes defendant's burden to prove that her conduct was nonetheless objectively reasonable.").

Although Defendant Nelson has attempted to justify *his* act of *issuing a citation* to Warner for soliciting donations, his affidavit says nothing about why it was objectively reasonable to order

16

Warner to take down his signs, stop handing out flyers that expressed Warner's viewpoints, and leave. Officer Proctor has submitted nothing in the summary-judgment record. Therefore, the Court will deny the Officers' requests for summary judgment on Count VII and order them to show cause in writing why, like the Village, they should not be held individually liable for violation of Warner's First-Amendment right to protected speech under Count VII.

### 2. The Officers have not demonstrated entitlement to qualified immunity on the retaliation claims.

By 2000, Tenth-Circuit general law on First-Amendment retaliation was clearly established:

> To recover under a First Amendment retaliation claim, [a plaintiff] must establish that (1) she was "engaged in constitutionally protected activity," (2) the defendant's actions caused her to suffer an "injury that would chill a person of ordinary firmness from continuing to engage in that [protected] activity," and (3) the defendant's actions "were substantially motivated as a response to [her] protected conduct." *See Nielander v. Bd. of County Comm'rs*, 582 F.3d 1155, 1165 (10th Cir. 2009) (citing *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000)).

*McBeth v. Himes*, 598 F.3d 708, 717 (10th Cir. 2010); *see also Crawford–El v. Britton*, 523 U.S. 574, 588, n. 10, 592 (1998) (noting that official reprisal for protected speech "offends the Constitution [because] it threatens to inhibit exercise of the protected right," and holding that the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out); *Perry v. Sindermann*, 408 U.S. 593, 597 (1972) (noting that the government may not punish a person or deprive him of a benefit on the basis of his "constitutionally protected speech"). When determining whether a defendant "is entitled to qualified immunity on the basis of a lack of causation between [the officer's] conduct and [the plaintiff's] injury, [the court must consider] . . . the version of facts most favorable to [the plaintiff]." *McBeth*, 598 F.3d at 717.

The Tenth Circuit has long held that, when the qualified-immunity inquiry turns on a subjective element, as it does when examining an officer's motive for apparently-retaliatory conduct (the third element of a First-Amendment retaliation claim), the qualified-immunity analysis is "modified slightly." *Bruning v. Pixler*, 949 F.2d 352, 356 (10th Cir. 1991). The officer "must do more than merely raise the [qualified] immunity defense; he must make a prima facie showing of the objective reasonableness of the challenged conduct." *Id.* at 356-57 (quotation marks omitted); *see also Mimics, Inc. v. Village of Angel Fire*, 394 F.3d 836, 847-48 (10th Cir. 2005) (applying "objectively reasonable" analysis to the "substantially motivated" prong of a First-Amendment retaliation claim). "If the defendant makes this prima facie showing, the plaintiff must then produce specific evidence of the defendant's culpable state of mind to survive summary judgment." *Bruning*, 949 F.2d at 356.

But the particularized issues whether the Officers in this case are entitled to qualified immunity on the issues of retaliation – specifically for issuing citations for violation of the Ordinance prohibiting solicitation and for initiating or causing Warner's criminal prosecution – are now more complex. The Defendants' brief and evidence submitted in support on the issue of qualified immunity for alleged retaliation is painfully deficient. As discussed below, they have not satisfied their burden to demonstrate that there is no genuine issue of material fact on the issue of retaliation such that they are entitled to summary judgment as a matter of law, and they have caused the Court to spend excessive time independently researching the issues.

As noted above, Defendant Nelson attempts to establish only that *he* had no retaliatory motive to issue a citation, but all his affidavit does is create a genuine issue of disputed fact on that issue in light of Warner's undisputed circumstantial evidence that, when Warner tried to comply

with obtaining a permit after Officer Chavez's warning in 2008, he was told by Village officials and employees that he did not need a permit; and the Officers selectively cited and prosecuted him by not issuing citations to, or criminally prosecuting, other individuals who were openly soliciting on the public streets without permits but who were not openly criticizing the Village Police Department.  *See McBeth*, 598 F.3d at 717 (noting that "the district court concluded that a factual dispute existed as to whether Himes acted with a retaliatory motive," and concluding that the Court of Appeals lacked "jurisdiction to consider the propriety of that determination" on interlocutory appeal of the denial of qualified-immunity).

The Defendants do not discuss the second, causation, element of First-Amendment retaliation as it has developed in recent years.  Instead of discussing and relying on recent Tenth-Circuit and Supreme-Court cases that squarely address when an officer may be entitled to qualified immunity in circumstances in which the alleged retaliatory behavior is issuing a citation/arrest or initiating a prosecution for violating an ordinance or statute, the Officers have cited only twenty-year-old Tenth-Circuit cases discussing probable cause for an arrest and cases from other circuits generally discussing objective reasonableness.  *See* Doc. 42 at 7-9.  The Court must apply the correct law, however, and will set out below what that law appears to be.

### A.  Retaliatory prosecution.

Since 1990, in the context of a First-Amendment retaliatory-prosecution claim, the Tenth Circuit had held that "'[a]n act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper.'" *Poole v. County of Otero*, 271 F.3d 955, 961 (10th Cir. 2001) (quoting *DeLoach v. Bevers*, 922 F.2d 618, 620 (10th Cir.1990) (quotation omitted)).  The Tenth Circuit held that, even where

police had probable cause to charge the plaintiff with a crime "in light of his conduct during the pursuit, [probable cause] is not relevant to his First Amendment [retaliation] claim." *Id.* But in 2006, the United States Supreme Court expressly overruled *Poole*, holding, in the retaliatory-prosecution context, that

> [s]ome sort of allegation . . . is needed both to bridge the gap between the nonprosecuting government agent's motive and the prosecutor's action, and to address the presumption of prosecutorial regularity. And at the trial stage, some evidence must link the allegedly retaliatory official to a prosecutor whose action has injured the plaintiff. The connection, to be alleged and shown, is the absence of probable cause.

*Hartman v. Moore*, 547 U.S. 250, 263 (2006). Thus, in 2010, the Tenth Circuit summarized First-Amendment retaliatory-prosecution claims in the qualified-immunity context based on *Hartman*.

> In *Hartman v. Moore*, 547 U.S. 250, 126 S. Ct. 1695, 164 L. Ed.2d 441 (2006), the Supreme Court held that the causation required in a First Amendment retaliatory prosecution claim connecting a retaliatory motive to the adverse action taken by the defendant is "but-for causation, without which the adverse action would not have been taken." *Id.* at 260, 126 S. Ct. 1695. In *Hartman*, the plaintiff alleged that police initiated a criminal prosecution against him in retaliation for his protected speech. *See id.* at 254, 126 S. Ct. 1695. In the retaliatory prosecution context, the Court noted the difficulty in establishing causation because the lawsuit generally must be brought against the law enforcement officer who acted with the retaliatory motive, as the prosecutor enjoys absolute immunity for his prosecutorial decisions. *Id.* at 261–62, 126 S. Ct. 1695. Thus, unlike in the normal retaliation case, where the same person possesses the retaliatory animus and takes the adverse action against the plaintiff, in the retaliatory prosecution context, the requisite causal connection is "between the retaliatory animus of one person and the action of another." *Id.* at 262, 126 S. Ct. 1695. To "bridge the gap between the nonprosecuting government agent's motive and the prosecutor's action," the Court held that a plaintiff bringing a claim for retaliatory prosecution must allege and prove an absence of probable cause. *Id.* at 263, 126 S. Ct. 1695.

*McBeth*, 598 F.3d at 717-18. The Tenth Circuit explained that, in *Hartman*, the Supreme Court noted that

> a retaliatory prosecution case differs from the ordinary retaliation case in two ways: first, a retaliatory prosecution claim possesses a distinct body of highly relevant

evidence (*i.e.* evidence of probable cause) that is "apt to prove or disprove retaliatory causation," and second, the more complex causation involved when the retaliator brings about the injury through the acts of a third party (such as a prosecutor). *Id.* at 261–62, 126 S. Ct. 1695.

*Id.* at 719. The Tenth Circuit noted that

the Eighth Circuit applied *Hartman* to the plaintiff's claim that the mayor's animus towards him because of his protected speech criticizing town officials led to city officials issuing the plaintiff twenty-six citations over a two-year period. *Id.* at 876. The Eighth Circuit concluded that "the Supreme Court's holding in *Hartman* is broad enough to apply even where intervening actions by a prosecutor are not present," and applied the probable cause requirement "to 'bridge the gap' in these circumstances between the Mayor's retaliatory animus and the officers' 'prosecution.'" *Id.* (quoting *Hartman*, 547 U.S. at 263, 126 S. Ct. 1695).

*Id.* Accordingly, the Tenth Circuit held that a First-Amendment claim for "successful retaliatory inducement" also must show that the inducement was the "but-for cause" of the adverse action, or the claim will fail "for lack of causal connection between unconstitutional motive and resulting harm, despite proof of some retaliatory animus in the official's mind." *Id.*

The Tenth Circuit further noted that

Courts have also extended the *Hartman* requirement of alleging a lack of probable cause to apply to retaliatory prosecution claims where the police officers obtained an indictment directly from a grand jury without "the intervening actions of a prosecutor." *See Barnes v. Wright*, 449 F.3d 709, 720 (6th Cir. 2006); and to at least some Fourth Amendment false arrest claims, *see Beck v. City of Upland*, 527 F.3d 853, 864 (9th Cir. 2008). While we do not hold that the *Hartman* rule is applicable to "ordinary" retaliation claims, we do think that the logic of the rule necessitates its application here, where "multi-layered causation" complicates the court's inquiry into whether the defendant's retaliatory animus caused the adverse action that harmed the plaintiff. *Skoog*, 469 F.3d at 1234 (declining to extend *Hartman* to case of "ordinary" retaliation that did not involve complex questions of causation).

*Id.*

Warner alleged that the New Mexico Court of Appeals reversed his convictions, and the Defendants cited the case in their summary-judgment brief. As noted above, the New Mexico Court of Appeals held that the Ordinance was facially constitutionally invalid. Warner, therefore, has

undisputed evidence  that the state courts have already held that the Village Ordinance was patently unconstitutional, which supports his contention that no probable cause existed for issuing the citation. *See, e.g., Courtney v. Okla. ex rel., Dep't. of Pub. Safety*, 722 F.3d 1216, 1225-27 (10th Cir. 2013) (holding that, where officer erroneously relied on inapplicable statute to arrest plaintiff, he "lacked probable cause to arrest [the plaintiff]  for violation of the . . . statute"); *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1251-52 (10th Cir. 2003) (noting that, in determining the "'objective legal reasonableness' of the state officer's actions, one relevant factor is whether the defendant relied on a state statute, regulation, or official policy that explicitly sanctioned the conduct in question;" but that "[w]here a statute authorizes official conduct which is patently violative of fundamental constitutional principles, an officer who enforces that statute is not entitled to qualified immunity").  But for the citations, no prosecutions for enforcement could have been initiated by the Village.  There are allegations and evidence, therefore, to show that the Officers' retaliatory motives were the "but-for" cause of Warner's prosecution, which is sufficient to avoid summary judgment at this stage, where Warner has had no opportunity to develop the summary-judgment record through discovery.  The Defendants have further failed to show that no genuine issue of material fact exists regarding whether they had a retaliatory motive to initiate a criminal prosecution by issuing the citation that served as the impetus for Warner's criminal prosecutions.  The Court will, therefore, deny summary judgment.

### B.  Retaliation by issuing the citations.

The Officers also have not established entitlement to summary judgment on the retaliation claim based on issuing the citations for solicitation.  In 2011, the Tenth Circuit declined to extend *Hartman's* "no-probable-cause" requirement to a retaliatory-arrest case.   *See Howards v.*

*McLaughlin*, 634 F.3d 1131, 1148 (10th Cir. 2011), *overruled by Reichle v. Howards*, 132 S. Ct. 2088, 182 L. Ed.2d 985 (2012).  The Tenth Circuit first determined that the plaintiff had established a material factual dispute regarding whether the police officers were substantially motivated by his political speech when they arrested him.  *See id.* at 1144-45.  In declining to apply *Hartman*, the Tenth Circuit explained that,

> [u]nlike the plaintiff in *Hartman*, Mr. Howards does not attack prosecutorial discretion based on the bad motive of a third person.  Instead, he contends Agents Reichle and Doyle arrested him with their own retaliatory motives, because of the exercise of his First Amendment rights.  Such is the quintessential "ordinary retaliation claim" as outlined in *Hartman*—a claim in which the agent allegedly harboring the unconstitutional animus is the same individual who carries out the adverse action.

634 F.2d at 1148 & n.14 (noting that, "[p]rior to *Hartman*, the law on retaliatory arrests was clear in the Tenth Circuit.  *Hartman* did nothing to disturb this law." and holding that the district court "correctly denied these Agents' motion for qualified immunity on Mr. Howards' First Amendment claim for retaliatory arrest) (internal citations omitted).

But the United States Supreme Court reversed the Tenth Circuit, holding that, in light of its opinion in *Hartman*, in 2006, "it was not clearly established that an arrest supported by probable cause could violate the First Amendment." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012).  The Supreme Court held that "it has never held that there is [] a [specific] right" "to be free from a retaliatory arrest that is otherwise supported by probable cause." *Id.* at 2094.  And the Supreme Court held that, "[a]t the time of Howards' arrest, *Hartman's* impact on the Tenth Circuit's precedent governing retaliatory arrests was far from clear.  Although the facts of *Hartman* involved only a retaliatory prosecution, reasonable officers could have questioned whether the rule of *Hartman* also applied to arrests." *Id.* at 2095.  The Supreme Court concluded that "[a] reasonable official also could have interpreted *Hartman's* rationale to apply to retaliatory arrests," "given that

retaliatory arrest cases also present a tenuous causal connection between the defendant's alleged animus and the plaintiff's injury." *Id.* (noting that "[a]n officer might bear animus toward the content of a suspect's speech. But the officer may decide to arrest the suspect because his speech provides evidence of a crime or suggests a potential threat."). Because "*Hartman* injected uncertainty into the law governing retaliatory arrests, particularly in light of *Hartman's* rationale and the close relationship between retaliatory arrest and prosecution claims, . . . [the officers were] entitled to qualified immunity." *Id.* at 2096-97.

The Court discerns no material legal distinction between a retaliatory citation and a retaliatory arrest in the context of a First-Amendment retaliation claim, thus if the Officers had established, as a matter of law, that probable cause existed to enforce the Ordinance, the Court would be compelled to hold that the Officers are entitled to qualified immunity on Warner's retaliatory-citation claim. *See Roska*, 328 F.3d at 1251 (noting that if a constitutional right is clearly established, the defendant must prove that his "conduct was nonetheless objectively reasonable").

But there is evidence that there was no probable cause to enforce the Ordinance because it is patently unconstitutional. *See Tobey v. Jones*, 706 F.3d 379, 392 (4th Cir. 2013) (holding that "*Reichle* does not apply here because Mr. Tobey specifically alleges that his arrest was not supported by probable cause, and 'probable cause or its absence will be at least an evidentiary issue in practically all [ ] cases.' *Hartman v. Moore*, 547 U.S. 250, 265, 126 S. Ct. 1695, 164 L.Ed.2d 441 (2006). At this stage in the litigation, of course, we must credit Mr. Tobey's allegation that Appellants arrested or caused him to be arrested without probable cause."). The Tenth Circuit has clearly-established law regarding probable cause where an ordinance or statute is patently violative of constitutional rights.

In 2009, relying on case-law issued in 2003-2005, the Tenth Circuit held that

> [a] law enforcement officer's reliance on a state statute, regulation, or official policy that explicitly sanctioned the conduct in questioned may absolve the officer from knowing that his conduct was unlawful, except when the statute or ordinance is so patently violative of fundamental constitutional principles, that a reasonable officer could not believe it was permissible to enforce it.

*Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1278 (10th Cir. 2009) (citing *Lawrence v. Reed*, 406 F.3d 1224, 1231 (10th Cir. 2005)).  In *Lawrence*, the Tenth Circuit held that "officers can rely on statutes that authorize their conduct-but not if the statute is obviously unconstitutional. Again, the overarching inquiry is whether, in spite of the existence of the statute, a reasonable officer should have known that his conduct was unlawful."  *Lawrence*, 406 F.3d at 1232.  "This means that some statutes are so obviously unconstitutional that we will require officials to second-guess the legislature and refuse to enforce an unconstitutional statute-or face a suit for damages if they don't."  *Id.* at 1233.  The Tenth Circuit noted several factors that will assist a court in determining whether reliance on a statute is reasonable: "'(1) the degree of specificity with which the statute authorized the conduct in question; (2) whether the officer in fact complied with the statute; (3) whether the statute has fallen into desuetude; and (4) whether the officer could have reasonably concluded that the statute was constitutional.'"  *Id.* n. 3 (quoting *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1253 (10th Cir. 2003)).   In *Lawrence*, because the constitutional inquiry was simple, requiring the official to ask himself only whether the "statute deprive[s] an individual of a protected property interest" and, if it did, whether the "statute provide[s] a hearing," the Tenth Circuit held that it was "not too much to expect [the official] to know that the ordinance [that did not provide for a hearing] was unconstitutional."  *Id.* at 1235; *see id.* at 1233 (holding that due process requires a hearing before property is taken is "a sufficiently obvious constitutional violation

that [the officer] should have known about.  [The officer], therefore, was not entitled to rely on the ordinance, and qualified immunity is inappropriate.").

But the Tenth Circuit noted in *Christensen* that "[p]olice officers are not constitutional lawyers, and they should not have to fear personal damages liability when they enforce the plain terms of an ordinance that has not been challenged in court, let alone overturned, unless its unconstitutionality is patent."  554 F.3d at 1278.  Thus, in *Christensen*, where police, relying on a city ordinance that permitted artists to display, but not to sell, their art, arrested an artist who was attempting to sell his artwork on public property, *see id.* at 1274, the Tenth Circuit affirmed the district court's order granting the officers qualified immunity.

> We think it is too much to expect that law enforcement officers, however reasonable or well-informed, would have known in 2004 that it is unconstitutional to enforce a general ordinance prohibiting unlicensed outdoor business activity on public property against an artist wishing to sell his wares in a park.

554 F.3d at 1278.

The question the Officers had to ask themselves in 2009 appears to be whether Ordinance 58-84(b) "is so patently violative of fundamental constitutional principles, that a reasonable officer could not believe it was permissible to enforce it."  *Id.*  The Officers have failed to brief or discuss this issue.  Summary judgment on this issue will be denied.

### 3.   Warner has failed to state a claim for violation of his rights to Equal-Protection.

"To withstand a motion for summary judgment, a plaintiff in a § 1983 suit challenging alleged racial discrimination in traffic stops and arrests must present evidence from which a jury could reasonably infer that the law enforcement officials involved were motivated by a discriminatory purpose and their actions had a discriminatory effect."  *Marshall v. Columbia Lea*

26

*Reg'l Hosp.*, 345 F.3d 1157, 1168 (10th Cir. 2003). Similarly, "[t]o sustain a claim under the Equal Protection Clause, a plaintiff must provide evidence that he was treated differently from others who are similarly situated to him, and that the acts forming the basis of the plaintiff's claim were motivated by a discriminatory purpose." *Id.* at 1179. The Officers contend that Warner "has not alleged nor presented any evidence that he ever claimed to be Hispanic and, more importantly, that the Officers involved knew of any such claims." Doc. 42 at 9. In response, Warner restates only that he is "Hispanic (Mexican-American citizen)," but he suggests nothing to indicate that the Officers, at least one of whom has a Hispanic last name, had a racially discriminatory motive to threaten him or give him a citation for solicitation. Doc. 45 at 9.

A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (internal quotation marks omitted). "[N]aked assertions devoid of further factual enhancement," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory allegations, will not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and bracket omitted). The Court concludes that Warner has not stated a plausible equal-protection claim against any Defendant, and summary judgment should be granted in their favor on this claim.

**4. Warner has failed to state a claim or to support a claim for conspiracy or supervisory liability against former Chief Wolfgang Born.**

There is but a single claim against former Chief Born - Count V -- conspiracy to violate First-Amendment right to free speech between "Nelson, Proctor and Born . . . in order to bar plaintiff from exercising his right to free speech in a public forum by the issuance of a citation(s), ordering

plaintiff to remove his signs from his truck and removing plaintiff from a public forum."  Am. Compl. at 8.  The amended complaint states that Chief Born "did enforce" the Ordinance, but Warner alleges that only Officers Chavez, Proctor, and Nelson actually told Warner to do anything or cited him.  *See id.* at 3-5.  Otherwise, the Amended Complaint is devoid of allegations involving Chief Born, and Warner does not allege any new allegations in his affidavit in response to the motion for summary judgment.  Nowhere does Warner mention "supervisory liability."  But insofar as the Defendants contend that Warner may be attempting to bring a claim against Chief Born for failure to supervise, the Court will also dismiss that claim.

"Section 1983 does not authorize liability under a theory of respondeat superior."  *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011).  Instead,

> [a] plaintiff [] must show an "affirmative link" between the supervisor and the constitutional violation. *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010). This requires, for example, more than "a supervisor's mere knowledge of his subordinate's" conduct.  *See Iqbal*, 556 U.S. at 677, 129 S. Ct. 1937.  This notion is embodied in the three elements required to establish a successful § 1983 claim against a defendant based on his or her supervisory responsibilities: (1) personal involvement; (2) causation, and (3) state of mind.

*Schneider v. City of Grand Junction Police Dep't.*, Nos. 12–1086, 12–1115, 717 F.3d 760, 767 (10th Cir. June 5, 2013). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. "[T]he plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well." *Dodds*, 614 F.3d at 1198.  "A plaintiff may therefore succeed in a § 1983 suit against a defendant-supervisor by demonstrating: (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of

constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation."  *Id.* at 1199.  The Tenth Circuit held that,

> after *Iqbal*, Plaintiff can no longer succeed on a § 1983 claim against Defendant by showing that as a supervisor he behaved "knowingly or with 'deliberate indifference' that a constitutional violation would occur" at the hands of his subordinates, unless that is the same state of mind required for the constitutional deprivation he alleges.

*Id.* at 1204.  "A plaintiff [also must] establish the 'requisite causal connection' by showing 'the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights.'" *Id.* at 1185.  No facts are sufficient to support a claim for violation of § 1983 by Chief Born in his supervisory capacity.

To state a valid conspiracy claim under § 1983, "a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants.  Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim." *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998).  Because Warner has failed to allege sufficient facts in his amended complaint to state a conspiracy claim against Chief Born and the Officers, and has not attempted to add new facts about an alleged conspiracy in his responsive affidavit, the Court will dismiss that claim.

**5.   Officer Nelson has not addressed Count II, the § 1983 claim based on malicious prosecution**.

Officer Nelson does not raise any arguments regarding Count II, and the Court will not *sua sponte* address that Count.

**IT IS THEREFORE HEREBY ORDERED** that Defendants' motion for summary judgment [Doc. 42] is **GRANTED in part** as follows: Defendants are granted summary judgment on Count III, the equal-protection/racial-discrimination claim against the Officers; and on Count V,

against the Officers for alleged conspiracy to violate Warner's First-Amendment right to free speech; and those claims are **DISMISSED WITH PREJUDICE**;

      **IT IS FURTHER ORDERED** that the Village shall show cause in writing why summary judgment should not be entered in Warner's favor on Count VI, based on the Village's "custom or policy" that resulted in the violation of Warner's right to free speech by refusing to allow him "to advocate or disseminate information on public property owned or under its control" and on the Village's failure to train its officers "in the area of free speech;" and on Count I (and Count IV which is subsumed in Count I) on retaliation for having its officers selectively cite and prosecute Warner after he continued to exercise his right to free speech;

      **IT IS FURTHER ORDERED** that Officers Proctor and Nelson shall show cause in writing why summary judgment should not be granted in Warner's favor on Count VII, for violating Warner's First-Amendment rights by "order[ing] him to pull down his signs and leave because of the message being conveyed;" and

      **IT IS FURTHER ORDERED** that the Village's and Officers Proctor's and Nelson's responses to the Orders to Show Cause are due within 15 calendar days of the filing of this Memorandum Opinion and Order.  Should these Defendants fails to respond within the time permitted, the Court will grant summary judgment in favor of Warner on these claims without further notice.  Warner may reply to the response within 15 days of the filing of the response, if any.

      **SO ORDERED** this 30th day of September, 2013 in Albuquerque, New Mexico.

                                      _____

                           **M. CHRISTINA ARMIJO**
                           **CHIEF UNITED STATES DISTRICT JUDGE**